## J. L. Crawleigh v. Galveston, Harrisburg & San Antonio Railway Company.

### Decided February 12, 1902.

**1.—Railway Company—Trespasser on Train—Negligence.**

Where the presence of a trespasser on the train was not known to the employes, and he was there without invitation, express or implied, and in violation of the rules of the railroad company, it was not liable for his death, though occasioned by a collision of trains resulting from the gross negligence of its employes, and though the deceased was riding in a safe place on the train.

**2.—Evidence—Impeaching Witness—Harmless Error.**

In an action against a railway company for the death of a son, it was error to permit defendant to cross-examine plaintiff as to his indictment for burglary and to introduce the indictment in evidence, but the error was harmless where plaintiff did not testify to any fact connected with the controlling issue which was determined against him upon sufficient evidence, and where his own counsel also brought out that he had been indicted for burglary in yet another county.

**3.—Same—Leading Question.**

Where a witness testified that she was present and saw the deceased pay money to the conductor for his fare, a question asking the conductor if such witness, or a man, or either of them, came to him and paid him money for such fare was not leading.

**4.—Same—Irrelevancy.**

Where defendant owed no duty to the deceased, a trespasser killed in a collision of trains, a question as to whether or not it was negligence to run doubleheader trains was irrelevant.

**5.—Same—Impeachment—Recalling—Predicate.**

It was not error to permit a witness to be recalled and cross-examined as to matters to be used as a basis for contradicting her.

**6.—Same—Witness Under Rule.**

It was in the discretion of the court to permit a witness to testify as to matters tending to impeach another witness, although the witnesses were under the rule, and the impeaching witness had been told what the other one had sworn.

**7.—Railway Company—Trespasser on Train—Charge.**

Where plaintiff sued for causing the death of his son upon the ground that the deceased had paid his fare and was a passenger on a freight train, a charge that if deceased paid his fare to the conductor and got on the trian with his consent, he was a passenger, and, if negligently killed, plaintiff could recover, fully and most favorably presented the phase of case alleged by plaintiff.

Appeal from Bexar.   Tried below before Hon. S. J. Brooks.

*J. D. Childs,* for appellant.

*Newton & Ward* and *Baker, Botts, Baker & Lovett,* for appellee.

FLY, Associate Justice.—This is a suit for damages occasioned by the death of Andrew F. Crawleigh, which was instituted by appellant, the father of deceased, against appellee.   After hearing the evidence the court submitted no issue, except the question as to whether deceased

when killed was a passenger on appellee's train. The issue was found against appellant and judgment was rendered for appellee.

There was a conflict in the evidence as to the circumstances under which deceased boarded the train of appellee a short time before his death, but the verdict of the jury on the issue as to deceased being a passenger was supported by a strong preponderance in the evidence. The material facts are that on the 29th day of May, 1900, Andrew Crawleigh, the son of appellant, desiring to go to Del Rio from San Antonio, in company with a companion, got on a flat car belonging to a freight train about to leave San Antonio for Del Rio, which train collided with another at a point near Presa street, within the limits of the city of San Antonio, and Andrew Crawleigh and his companion were killed. Deceased had not paid anything to ride on the train and his presence thereon was unknown to the crew operating the train. There was a rule promulgated by appellee prohibiting anyone from riding on a freight train, and denying the privilege to any employe to grant permission so to do. No such permission was sought or given, and the train crew swore that they did not know that deceased and his companion got on the train.

The sole ground of recovery in this case was that deceased occupied the position of passenger towards appellee, and under the pleadings, if he was not a passenger, appellant could not recover. There is no count alleging that he was a trespasser on the train and setting up the obligations that appellee owed to him as a trespasser, but it was reiterated in the petition that he had paid his fare and boarded the flat car with the knowledge and consent of the conductor.

The evidence introduced by appellant had as its object demonstration of the fact that the deceased had paid his fare to the conductor, had his permission to get on the car, and was therefore a passenger. The issue as to deceased being a passenger was submitted to the jury by the court, and the assignments urging objections to the charge are very uncertain. It will be sufficient to say that there was nothing in the charge that assumed that deceased was not a passenger or that gave undue prominence to the negative side of the issue. No tenable objections are urged to the charge. As supplemented by the special charge requested by appellee, the charge presented every issue arising under the pleadings and facts.

Appellant asked a charge which involves the proposition that if deceased was a trespasser on the train and his presence thereon was not known to the employes of appellee, still if the collision in which he was killed occurred through the gross negligence of the employes the railroad company would be liable in damages for his death. To the discussion of this proposition over two-thirds of the brief of appellant is devoted, and to support it a lengthy array of authorities from the courts of many States, including a number from Texas and from different Federal courts, are cited. We have consulted many of the authorities and find

none that support the propositions contained in the special charges asked by appellant.

The requested charges are as follows:

"You are further charged, at the instance of plaintiff, that if you believe from the evidence that plaintiff's deceased son, at the time he was killed, was a trespasser on defendant's train, he did not thereby forfeit all his rights, and if you further believe from the evidence that he was a trespasser at said time and place, but was riding in a reasonably safe place on defendants's train at the time, and was only guilty of slight negligence when he was injured and killed, if you believe from the evidence that he was injured and killed by a collision of defendant's train, and further believe from the evidence that the defendant, its servants, agents, and employes, in a grossly negligent and reckless manner, so operated said trains to cause them to collide, and such collision was the proximate cause of the death of plaintiff's son, and that plaintiff's said deceased son did not then and there directly contribute to his death, then you will find for plaintiff. You are further instructed that "gross negligence," as set out in this charge, is defined to be that entire want of care which would raise a presumption of a conscious indifference to consequences, and the conduct of the servants and agents of defendants can not be considered gross negligence, unless evinced by an entire failure on their part to exercise care, or by the exercise of so slight a degree of care on their part as to justify the belief that they were indifferent to the interest and welfare of others. By the term recklessness, as herein set out, is meant, 'the state or quality of being reckless or heedless; perverse or desperate rashness.'

"You are further charged, at the instance of plaintiff, that if you should believe, from the evidence in this case, that plaintiff's son was a trespasser on said defendant's train at the time he was injured and killed by a collision of defendant's trains, and further find from the evidence in the case that the defendant, its servants and employes in charge of said trains, so operated, permitted, or caused to be operated said trains with such willful negligence as to directly and proximately cause the death of plaintiff's said minor son, then in that event you will find for plaintiff.

"By the term 'willful,' as herein set out, is meant voluntary, deliberate, intentional; obstinate and unreasonable; not to be moved from one's notions, inclinations, purposes, or the like, by counsel, advice, commands, or instructions."

It will be noted that in these charges the liability of appellee attached if the son of appellant was riding in a reasonably safe place on the train, regardless of the fact that no one knew he was on the train, and regardless of the fact that he had no invitation, express or implied, to be on the train. We do not think such a proposition can be sustained by any text book or decision. On the other hand there are numerous authorities that condemn any such proposition.

In the case of Dalton v. Railway, 56 Southwestern Reporter, 657, a de-

murer to a petition was sustained in which it was averred that the deceased boarded a freight train and that the employes of the railway company knew he was on there, and it was held by the Court of Appeals of Kentucky that the only duty a railroad company owed to anyone who was riding on a freight train without right, and by the mere sufferance of the train crew, was not to injure him after knewledge of his danger, and the company was not liable for his death in a collision, even though it resulted from the company's gross negligence.

In the case of Railway v. Burnsed, 12 Southern Reporter, 958, it was said by the Supreme Court of Mississippi: "Can it be seriously insisted that a trespasser upon a train occupies a better position than a trespasser on tracks? If degrees in trespass could be established it occurs to us that the train trespasser is the greater wrongdoer than the track trespasser. He, like the track trespasser, is entitled to exemption from wanton or willful injury, or from injury that might and should have been avoided by the railroad company after seeing the danger of the trespasser's situation."

In the cases of Files v. Railway, 21 Northeastern Reporter, 311, and Powers v. Railway, 26 Northeastern Reporter, 446, it was held that where a conductor had invited a person to ride on freight train, in violation of the rule of the company, that it would not be liable for injuries occurring from negligently starting a train, or from a collision.

In the case of Railway v. Moore, 49 Texas, 31, it was held that railway companies have the right to make regulations that freight and passengers shall be carried on separate trains, and that "if a party in violation of such regulation, and without the consent of the company, forces himself into one of its freight trains, it surely can not be supposed that the company could be held responsible to him in its character as a carrier of passengers; or that the party who should thus contribute to the injury which he might sustain while thus wrongfully in the train, maintain an action against the company for such injury. Unless he could, an action can not be maintained under the statute by his heirs, representatives, and relatives, in case of his death." The case is cited approvingly in Railway v. Black, 87 Texas, 150. If the servants of appellee did not know of the presence of deceased upon the freight train, the railroad could no more be held liable for his death than it could if he had gone on the track and been run over without the employes knowing of his presence on the track. In the one case as the other no duty would arise in case of the trespasser until he was discovered in a place of danger. No duty can arise in connection with a person who secretly enters a freight car, in violation of the rules of the company, and without the knowledge or consent of the employes, and where there is no duty there is no liability. Railway v. Dobbin, 91 Texas, 60; Railway v. Breadow, 90 Texas, 31; Railway v. Douglass, 90 Texas, 125; Railway v. Crum, 25 S. W. Rep., 1126.

The third assignment of error complains of the action of the court in permitting appellee to ask appellant on cross-examination if he had

not been indicted for burglary, and in allowing the introduction in evidence of an indictment for burglary against appellant. The testimony was clearly inadmissible. Boon v. Weathered, 23 Texas, 675; Ayers v. Duprey, 27 Texas, 600; Kennedy v. Upshaw, 66 Texas, 442; Insurance Co. v. Faires, 13 Texas Civ. App., 111; Railway v. De Bord, 53 S. W. Rep., 593; Railway v. Johnson, 83 Texas, 628.

The error in the admission of the testimony does not necessarily demand a reversal of the judgment for the reason that appellant did not claim to know any of the circumstances surrounding the death of his son, and did not testify to any fact connected with the issue as to whether deceased was a passenger or trespasser on the train of appellant. That being the sole issue and being determined against appellant, the jury could not have considered the testimony of appellant for any purpose. It follows that the illegal testimony could not have injured the cause of appellant. Had the jury found that deceased was a passenger but denied any damages to appellant, the error in the admission of the testimony as to the burglary doubtless would have necessitated a reversal, because it would have been apparent that the testimony of appellant as to the contributions received by him from his son had been ignored by the jury. Appellant does not attempt to show that the illegal testimony damaged him, and it does not appear from the record that any injury was sustained by him. Appellate courts do not reverse judgments upon abstract errors. Railway v. Kaufman, 2 Posey U. C., 97; Heathcock v. Goodrich, 2 Posey U. C., 585.

There is no merit in the fourth, fifth, sixth, and seventh assignments of error. The questions were not leading ones. Maggie Crawleigh, the only witness for appellant who testified that money was paid by her deceased brother to the conductor for his passage on the freight train, swore that she was present and saw the money paid to the conductor and heard the arrangements made for the passage, and it was proper and legitimate to ask the conductor if the young lady or a man or either of them came to him and paid him money and got permission to ride on the train. The witness had testified before, without objection, that he had never seen the young lady until she testified in court and had never seen deceased until after the wreck.

The fact that the witness W. H. Rannahan had been taken by the railway company before the Railroad Commission to testify on the question of what is known as "double headers" had no pertinency to the case and was properly excluded. The question as to whether the witness would undertake to say that it was not negligence to run two trains together in the daytime, in San Antonio, was irrelevant and immaterial. In view of the fact that no duty was shown to exist as to deceased by appellee, nothing elicited from the witness by the question could have affected the cause.

It was not error to permit appellee to recall the witness Maggie Crawleigh and cross-examine her on matters to be used as a basis for contradicting her. Greenl. on Ev., sec. 462, and notes.

It was in the discretion of the court to permit Mrs. Lovelady to testify as to matters tending to impeach Maggie Crawleigh, although the rule had been invoked as to the witnesses and the witness had been told by the claim agent what Maggie Crawleigh had sworn. We do not think under the facts of this case that the discretion vested in the court was abused.

The only witness introduced by appellant to prove that deceased paid his fare and went on the train under the invitation of the conductor was Maggie Crawleigh, and there was not a circumstance sworn to by any other witness in the case that tended to corroborate her. She said that an older sister was present when the fare was paid, and also stated that the same sister was in the court room all the day on which she, Maggie, testified, and yet she was not placed on the stand. This sister was in one place called Annie, and in another Cecilia. Not only was there a failure to corroborate the witness, but on the other hand every fact and circumstance in evidence tended to throw discredit upon her testimony. Under the overwhelming preponderance of the evidence the jury would not have been justified in returning any verdict other than that rendered by them. Had the complaints made as to the admission of evidence been well taken, there is nothing in the record that tends to show that such evidence had any influence upon the verdict.

The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

As stated in our former opinion, it was alleged in the petition that Andrew Crawleigh was a passenger on appellee's train, and all of the evidence of appellant was directed to proof that the relation of carrier and passenger existed between appellee and deceased. In the requested charges the effort seems to have been to recover on the ground that he might be a trespasser, but if the servants of appellee were reckless and grossly negligent in their conduct in producing the collision, appellee was liable whether anyone knew deceased was on the train or not.

To sustain the position of appellant we are cited in the brief to quite a number of cases, and in the motion for rehearing to two cases, which are specially invoked in aid of the contention. Those cases are Way v. Railway, 64 Iowa, 51, and 73 Iowa, 466, 19 Northwestern Reporter, 829, and 35 Northwestern Reporter, 525, and Whitehead v. Railway, 99 Mo., 263.

In the Way case the decedent got on the freight train and presented to the conductor a mileage ticket issued to one R. G. Forgrave. The conductor, not knowing that Way was not Forgrave, detached coupons for his passage. It was held on the first appeal that Way was riding on the railroad ticket of another, contrary to the rule of the company, and was thereby perpetrating a fraud, and the law as to passengers could not be invoked by his representatives in suing for damages. On the second

appeal it was held that if the employes, who were engaged in moving the train, knew or had reason to believe that the caboose was occupied, and yet moved it recklessly or negligently, without regard to the safety of the occupants of the caboose, and deceased was injured thereby, the railway company would be liable. The court said: "It may be conceded that, as the intestate was in the caboose without right, defendant owed him no special duty, and that its employes were not bound to ascertain whether he was there before commencing the work in which they were about to engage. Neither were they required to govern their conduct with reference to the possibility of his being there." The conductor knew the man was on the train, and the case does not in any manner sustain the position of appellant.

In the Missouri case the boy was on the train with the consent of the agents of the railway company, and on that ground it was held that the company owed him a duty.

In the case of Railway v. Pitzer (Indiana), 6 Northeastern Reporter, 310, Judge Elliott, discussing a case where a child 7 years of age entered a passenger train, said: "We conclude, therefore, that the mere fact that the child was permitted to enter the passenger train creates no cause of action against appellant, for he entered the train as an intruder. Intruders, infants or adults, can not as a general rule impose any duties upon the person on whose property they intrude." A large number of authorities are cited in support of the proposition.

In the case of McAlpin v. Powell, 70 New York, 126, the rule governing in cases like the present is thus clearly stated: "To maintain an action for personal injury occasioned by the negligence of or want of care of another, it must be made to appear that the defendant owed some duty or obligation to the party injured, which he failed to discharge or perform. Unless there is some contract, duty or service which a party is bound to fulfill, there can be no negligence, fault, or breach of the obligation. * * * The real point to be determined then is, whether the defendant owed any duty to the deceased. If he was a trespasser when he entered upon the fire escape, he occupied the position of one who comes upon the premises of another without right, and who can maintain no action if he is injured by an obstruction, or falls into an excavation which has been left open and uncovered."

The same rule is announced in Dobbins v. Railway, 91 Texas, 60, and in Railway v. Morgan, 92 Texas, 98.

We reiterate the ruling that in no text book or decision has it ever been stated that a railway company will be liable for damages to a person who is on the train without the knowledge or consent of the railway company, and in defiance of its rules, for the negligence, no matter how gross, of its employes. And yet this is what appellant asked the court to charge the jury in this case.

The trial court instructed the jury that if deceased paid his fare to the conductor and got on the train with his consent he would be a passenger, and if he was killed through the negligence of appellee, ap-

pellant should recover. That charge was exceedingly favorable to and fully presented the phase of case alleged by appellant, and under the evidence deceased was either a passenger or he was a trespasser, because there was no testimony introduced tending to show that any agent of appellee knew of the presence of the deceased on the car if he did not pay his fare. The court at the request of appellee gave the following charge: "That if you believe from the evidence that the deceased Andrew Crawleigh boarded defendant's freight train without the consent or knowledge of the conductor of said train in charge of said train, and that said conductor did not know that the said Andrew Crawleigh was upon said train until after the accident and collision of said train, then I charge you to return a verdict in favor of defendant, even though you should further believe from the evidence that the crew in charge of said train were negligent and the collision of said trains was the result of such negligence." That charge presented the phase of case made by the testimony of appellee.

If under the petition it was permissible to have presented a case of a trespasser on the train with the knowledge of the train crew, and the testimony sustained the allegation, appellant should have asked the presentation of such issue. He not only did not do so in the lower court, but does not contend in this court that such issue should have been presented, and on the other hand contends for the proposition that if the collision was brought about by negligence on the part of the train crew, appellee is liable whether anyone knew deceased was on the train or not. Such contention, as before stated, meets with no sanction in any text book or decision that has come to our knowledge.

It is insisted that the testimony drawn from appellant as to his having been indicted for burglary was injurious to his cause. In addition to the reasons given in our former opinion as to its being harmless, it appears that appellant's counsel brought out, in addition to the fact elicted by appellee that appellant had been indicted for burglary in Bexar County, the fact that he had also been indicted for burglary in Bandera County, and he is in no position to complain of the testimony brought out by appellee.

The motion is overruled.

*Overruled.*

Writ of error refused.